No. 24-1355

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

———————————

BROC T. WALTERMEYER,

Plaintiff - Appellant,

v.

ROBERT HAZLEWOOD, Warden, FCI Berlin; DIANE L. KISLER, Physician, FCI
Berlin

Defendants - Appellees.

———————————

On Appeal from the U.S. District Court
for the District of New Hampshire
No. 1:19-CV-223, Hon. Landya McCafferty

———————————

**APPELLANT'S OPENING BRIEF**

———————————

Samuel Weiss
RIGHTS BEHIND BARS
416 Florida Avenue NW
  #26152
Washington, DC 20001
202-455-4399
sam@rightsbehindbars.org

*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS.................................................................................................i

TABLE OF AUTHORITIES..........................................................................................ii

JURISDICTIONAL STATEMENT ................................................................................1

STATEMENT OF THE ISSUES....................................................................................1

STATEMENT OF RELATED CASES ...........................................................................1

STATEMENT OF THE CASE.......................................................................................2

SUMMARY OF ARGUMENT......................................................................................2

STANDARD OF REVIEW ...........................................................................................3

ARGUMENT................................................................................................................4

CONCLUSION...........................................................................................................15

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

*Agostini v. Felton*, 521 U.S. 203 (1997) ...................................................................9

*Bernier v. Allen*, 38 F.4th 1145 (D.C. Cir. 2022)......................................................14

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), ..4

*Bosse v. Oklahoma*, 580 U.S. 1 (2016) .......................................................................9

*Carlson v. Green*, 446 U.S. 14 (1980) ..................................................................*passim*

*Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001) ....................................................9

*Davis v. Passman*, 442 U.S. 228 (1979) .....................................................................4

*Douglas v. Hirshon*, 63 F.4th 49 (1st Cir. 2023)........................................................3

*Egbert v. Boule*, 142 S. Ct. 1793 (2022) ..............................................................*passim*

*Egbert v. Boule*, 142 S. Ct. 457 (2021) ....................................................................10

*Erickson v. Pardus*, 551 U.S. 89 (2007) ...................................................................3

*Farmer v. Brennan*, 511 U.S. 825 (1994) ...............................................................6, 7

*Hampton v. Jones*, No. 21-2880, 2022 WL 4820355 (3d Cir. Oct. 3, 2022) .....................13

*Hicks v. Ferreyra*, 64 F.4th 156 (4th Cir. 2023)........................................................14

*Hohn v. United States*, 524 U.S. 236 (1998)...............................................................9

*Masias v. Hodges*, No. 21-6591, 2023 WL 2610230 (4th Cir. Mar. 23, 2023) .................14

*McCarthy v. Madigan*, 503 U.S. 140 (1992) .........................................................6, 10

*Minneci v. Pollard*, 565 U.S. 118 (2012) ...................................................................9

*Patton v. Blackburn*, No. 21-5995, 2023 WL 7183139 (6th Cir. May 2, 2023) .................14

*Porter v. Nussle*, 534 U.S. 516 (2002) .....................................................................11

*Quinones-Pimentel v. Cannon*, 85 F.4th 63 (1st Cir. 2023) ........................................12, 13

*Ruivo v. Wells Fargo Bank, N.A.*, 766 F.3d 87 (1st Cir. 2014)........................................3

*Snowden v. Henning*, 72 F.4th 237 (7th Cir. 2023)......................................................14

*Stanard v. Dy*, 88 F.4th 811 (9th Cir. 2023) ..............................................................13

*Vaughn v. Bassett*. No. 22-10962, 2024 WL 2891897 (5th Cir. June 10, 2024) ...............13

*Ziglar v. Abbasi*, 582 U.S. 120 (2017) ...................................................... 3, 4, 5, 7

**STATUTES**

28 U.S.C. § 1291 ...................................................................................1

42 U.S.C. § 1997e (1998) ....................................................................11

42 U.S.C. § 1997e(a) ..........................................................................10

**OTHER AUTHORITIES**

141 Cong. Rec. H14078, H14105 (daily ed. Dec. 6, 1995) ............................................11

Bureau of Prisons, Control, Custody, Care, Treatment, and Instruction of Inmates, 44 Fed. Reg. 62,248 (Oct. 29, 1979). ..................................................................10

## JURISDICTIONAL STATEMENT

Plaintiff-Appellant Broc Waltermeyer appeals from an order of dismissal with prejudice entered March 14, 2024, by the U.S. District Court for the District of New Hampshire. Add. 9. The district court had subject-matter jurisdiction over his claims under 28 U.S.C. § 1331. In accordance with Federal Rule of Appellate Procedure 4(a), Waltermeyer filed a timely notice of appeal on December 29, 2023. App. 26. This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Whether the district court erred in concluding that the Supreme Court has *sub silentio* overruled *Carlson v. Green*, 446 U.S. 14 (1980), leaving Waltermeyer without a cause of action for his Eighth Amendment claim.

## STATEMENT OF RELATED CASES

To counsel's knowledge, this case has not been before this Court previously. Counsel is not aware of any cases or proceedings that are in any way related, completed, pending, or about to be presented before this court or any other court or agency, state or federal.

## STATEMENT OF THE CASE

Brock Waltermeyer was incarcerated in Federal Correctional Institution in Berlin, New Hampshire in 2018 and 2019. App. 7. Waltermeyer had degenerative bone disease which caused chronic pain in both knees, interfering with his ability to walk, sit and

sleep. App. 8–9. He alleges that Defendants were deliberately indifferent to his medical need, failing to provide necessary treatments which resulted in excruciating pain, a limitation of movement, and permanent damage that will necessitate knee replacements. App. 9.

Defendants moved to dismiss Waltermeyer's complaint on the sole ground that Waltermeyer lacked a cause of action under *Bivens*. App. 7. They did not raise, for example, the adequacy of Waltermeyer's allegations in stating a claim or the affirmative defense of qualified immunity. The magistrate judge recommended that Defendants' motion be dismissed without prejudice to the argument being raised again after discovery. App. 24. The district court rejected the report and recommendation, holding instead that there cannot be a *Bivens* claim when there is an alternative remedial structure available to the plaintiff. Add. 4. Every federal prisoner has access to the administrative grievance process and, therefore, regardless of Waltermeyer or any other prisoner's allegations they cannot bring a claim under *Bivens* the court reasoned.

Waltermeyer timely appealed. App. 26.

## SUMMARY OF ARGUMENT

This Court should reverse and remand for Waltermeyer to pursue a *Bivens* action based on deliberate indifference to his serious medical need and a Rehabilitation Act claim based on the prison's failure to accommodate his disability.

Waltermeyer's Eighth Amendment claim does not require an extension of *Bivens* to a new context. A case arises in a "new *Bivens* context" where it "is different in a

meaningful way from previous *Bivens* cases." *Ziglar v. Abbasi*, 582 U.S. 120, 139 (2017).

Factors courts should consider in evaluating whether a case presents such a "new *Bivens* context" include the constitutional right at issue and the extent of judicial guidance available governing the scope of that right, the rank of the officers involved, and the risk of judicial intrusion into the functioning of other branches. *Id.* at 140. By every factor, Waltermeyer's case is on all fours with *Carlson.* The district court held that this conclusion is irrelevant even if true because *Carlson* is no longer good law because the administrative grievance process categorically displaces a *Bivens* remedy for federal prisoners. Such a holding conflicts with precedent from this Court and the U.S. Supreme Court and merits reversal.

## STANDARD OF REVIEW

This Court reviews a district court's grant of a motion to dismiss de novo. *Douglas v. Hirshon*, 63 F.4th 49, 54 (1st Cir. 2023). This Court "constru[es] the well-pleaded facts in the light most favorable to the plaintiff, accepting their truth and drawing all reasonable inferences in plaintiff's favor." *Ruivo v. Wells Fargo Bank, N.A.*, 766 F.3d 87, 90 (1st Cir. 2014) (citation omitted). "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation and quotation marks omitted).

**ARGUMENT**

This appeal presents the question whether *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), remains good law in circumstances not meaningfully different from the cases in which the U.S. Supreme Court has recognized a cause of action under *Bivens* (*Davis v. Passman*, 442 U.S. 228 (1979), and, relevant here, *Carlson v. Green*, 446 U.S. 14 (1980)). The district court held that the answer is no: *Bivens* and *Carlson* have been silently overruled in all circumstances. It did so by relying exclusively on Tenth Circuit case law, writing that "the Tenth Circuit's [case law] is on all fours with Waltermeyer's case" and that the principles the district court invoked were "supported by the Tenth Circuit's post-*Egbert* case law."

The district court erred. While the district court characterized the Tenth Circuit's opinions fairly, its ruling was inconsistent with the law of every other circuit including, notably, this one. And for good reason: the Tenth Circuit's reasoning in the decisions the district court invoked clashes with precedent from the U.S. Supreme Court.

In *Bivens*, the Supreme Court recognized an implied cause of action for damages against federal officers who violate an individual's constitutional rights. *Bivens* established that "victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court." *Carlson*, 446 U.S. at 18. A *Bivens* claim "is brought against the individual official for his or her own acts, not the acts of others." *Abbasi*, 582 U.S. at 140.

In the Supreme Court's recent explication of *Bivens* in *Ziglar v. Abbasi*, the Court clarified how to determine the availability of a *Bivens* remedy for a given constitutional claim. At the outset, the court should evaluate whether the case arises in a "new *Bivens* context," such that it "is different in a meaningful way from previous *Bivens* cases." *Id.* at 139. If the claim does arise in a "new context," the court should inquire into whether there are any "special factors counselling hesitation" before extending a damages remedy into the new context. *Id.* at 136. A case may arise in a "new context:"

> because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 140; *see also id.* at 147–48; *Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022) ("[A] new context arises when there are 'potential special factors that previous *Bivens* cases did not consider.'"). Because Waltermeyer's Eighth Amendment claim does not arise in a "new context" and is therefore not an extension of *Bivens*, no recourse to the *Bivens* "special factors" is necessary to conclude that a damages remedy is available.

After *Bivens* authorized a damages action against federal narcotics agents who violated the Fourth Amendment by executing a search and an arrest without a warrant and using excessive force in making the arrest, the Supreme Court subsequently permitted a damages remedy against rank-and-file federal prison officials for violating the Eighth Amendment in *Carlson v. Green*. *See* 446 U.S. at 18–23. In *Carlson*, the mother

of a deceased asthma patient who had been incarcerated in federal prison sued prison officials for deliberate indifference to his serious medical needs after they failed to give him competent medical attention, administered contraindicated drugs and a non-working respirator that worsened his condition, and delayed his transfer to an outside hospital. *Id.* at 16 n.1. The Court concluded that a damages remedy was appropriate for the alleged Eighth Amendment violation because rank-and-file prison officials "do not enjoy such independent status in our constitutional scheme as to suggest that judicially created remedies against them might be inappropriate." *Id.* at 19. Though "requiring [prison officials] to defend [a damages] suit might inhibit their efforts to perform their official duties" to some extent, the Court explained that qualified immunity would "provide[] adequate protection." *Id.* Meanwhile, a damages remedy against individual prison officials for Eighth Amendment violations would "serve[] a deterrent purpose" by imposing "personal financial liability." *Id.* at 21.

A decade later, in *McCarthy v. Madigan*, the Court reaffirmed *Carlson*'s holding, reiterating that "prison officials" are subject to *Bivens* liability because they "do not enjoy an independent status in our constitutional scheme, nor are they likely to be unduly inhibited in the performance of their duties by the assertion of a *Bivens* claim." 503 U.S. 140, 151 (1992), *superseded by statute on other grounds as recognized by Woodford v. Ngo*, 548 U.S. 81, 84-85 (2006). Two years after that, in *Farmer v. Brennan*, the Court applied *Carlson* to another Eighth Amendment claim, this time based on prison officials' failure to protect the plaintiff from a substantial risk of violence from another prisoner. 511

U.S. 825, 830 (1994). The Supreme Court acknowledged the viability of the plaintiff's claim under *Bivens* without analysis and proceeded to clarify the standard for Eighth Amendment deliberate indifference claims in a *Bivens* suit. *Id.* at 832–40. Together these cases indicate the continuing viability of *Bivens* suits against line-level prison officials at the very least for medical deliberate indifference.

While the Supreme Court has in recent years warned against expanding *Bivens* into new contexts, *Carlson* claims are not new contexts, and Waltermeyer's allegations do not meet a single one of the *Abbasi* factors for identifying a "new *Bivens* context" as either a legal or factual matter. *Abbasi*, 582 U.S. at 139–40. The Eighth Amendment's prohibition on cruel and unusual punishments generally and, more specifically, its prohibition on deliberate indifference to serious medical needs is the source of both the deliberate indifference claim at issue in *Carlson* and Waltermeyer's claim. Judicial precedent provides no "less meaningful" of a "guide for official conduct" as in *Carlson*. *See Abbasi*, 582 U.S. at 148 ("The Court has long made clear the standard for claims alleging failure to provide medical treatment to a prisoner—'deliberate indifference to serious medical needs.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

The facts of *Carlson* and this case also show that there is no "meaningful" distinction between them, as the Supreme Court defined that term in *Egbert*, 142 S. Ct. at 1803, and *Abbasi*, 582 U.S. at 139–40. The rank of the officers involved is no higher here than it was in *Carlson*. In fact, Waltermeyer seeks to hold accountable for his harm only the rank-and-file medical officials who were personally responsible for his injury.

7

The plaintiff in *Carlson*, by contrast, sought damages from a range of officials at different levels of the prison bureaucracy, all the way up to the federal director of the Bureau of Prisons, *Carlson*, 446 U.S. at 14. The official action at issue in both cases is equally "specific": Each suit involved a claim of direct harm by a prison official to an individual in his care rather than a challenge to a general policy that created certain conditions of confinement. In sum, there are no factors implicated here "that previous *Bivens* cases did not consider." *Egbert*, 142 S. Ct. at 1803.

Moreover, there is no greater risk in this case of intrusion by the judiciary into the functioning of other branches. As the Supreme Court explained in *Carlson*, prison officials lack the kind of "independent status in our constitutional scheme" that would render inappropriate "judicially created remedies against them." 446 U.S. at 19.

The district court did not consider whether there were meaningful differences between *Carlson* and Waltermeyer's allegations. Instead, the court held that because there was an alternative remedy—the prison's administrative grievance process— Waltermeyer lacked a *Bivens* remedy regardless of any similarities to *Carlson*. The administrative grievance process applies to all medical deliberate indifference claims so would mean that *Carlson* has been overruled. *Abbasi* also clearly laid out a two-step process the first step of which is the new context question, so that, by necessity, would no longer be good law either. And given that at least some form of administrative remedy exists for any type of federal law enforcement misconduct, *Bivens* would no longer be good law either. The Supreme Court in *Egbert*, the district court by necessity

held, overruled several seminal Supreme Court opinions *sub silentio*, including opinions like *Abbasi* that it favorably cited. *See Egbert*, 596 U.S. at 491.

The Supreme Court has repeatedly reminded lower courts that even if a precedent of the Court "appears to rest on reasons rejected in some other line of decisions," a court of appeals "should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions." *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989)); *see also Bosse v. Oklahoma*, 580 U.S. 1, 3 (2016) ("[I]t is this Court's prerogative alone to overrule one of its precedents." (quoting *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997)). Accordingly, decisions of the Supreme Court "remain binding precedent until [it] see[s] fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality." *Hohn v. United States*, 524 U.S. 236, 252–53 (1998).

Despite multiple opportunities, this Court has declined to overrule *Bivens* or its progeny. *See, e.g., Minneci v. Pollard*, 565 U.S. 118, 126 (2012); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 67–68 (2001). Just the opposite: In *Ziglar*, the Court cautioned that its opinion was "not intended to cast doubt on the continued force, or even the necessity, of *Bivens*." 582 U.S. at 134. And in *Egbert*, the Court again expressly refused to overrule Bivens itself, stating that the Court "need not reconsider *Bivens* itself" to resolve the case before it. 596 U.S. at 502; *see also id.* at 491 (noting that the Court had declined to "dispense with Bivens altogether"). Were this not clear enough, Petitioners in *Egbert*

sought certiorari on the question of whether *Bivens* should be overruled in its entirety and the Court denied certiorari on that question while granting it on others. *See Egbert v. Boule*, 142 S. Ct. 457 (2021).

Perhaps the district court believed that the administrative grievance process was relatively new, meaning that its presence would differentiate Waltermeyer's case from *Carlson* and the several Supreme Court opinions reaffirming it as good law, most recently *Abbasi*. The district court hints at that being the case, writing that "*Egbert* precludes a *Bivens* claim where there is a *new* alternative remedial structure available to the plaintiff." Add. 4 (emphasis added). The administrative grievance process, however, is decades-old and was in place when *Carlson* was decided. *See* Bureau of Prisons, Control, Custody, Care, Treatment, and Instruction of Inmates, 44 Fed. Reg. 62,248 (Oct. 29, 1979). And if "new" simply meant unconsidered by the opinions in *Carlson* and *Bivens*, that would obviate both opinions and render incoherent *Abbasi*'s lengthy discussion of the plaintiffs' conditions claims—if the existence of the grievance process was sufficient to create a new context, why the lengthy analysis of other variables while not mentioning the grievance process available in all federal prisons?

Holding that the administrative grievance process precluded a *Bivens* remedy out of separation of powers concerns would be particularly ironic here. In 1995, Congress passed the Prison Litigation Reform Act, making the policy choice that prisoners could bring *Bivens* claims so long as they exhausted the administrative grievance process first. *See* 42 U.S.C. § 1997e(a). In *McCarthy v. Madigan*, 503 U.S. 140 (1992), the Supreme Court

had held that a federal prisoner did not need to exhaust the BOP administrative grievance procedures before bringing a *Bivens* claim that alleged that prison employees' deliberate indifference violated his Eighth Amendment rights. *Id.* at 142. Congress legislated in response to this ruling, and could have decided that BOP grievance procedures should displace a *Bivens* remedy; instead it made the more modest decision to extend the exhaustion requirement to apply to any suit "under section 1983 of this title, or any other Federal law," *see* 42 U.S.C. § 1997e (1998) (emphasis added); *see also* 141 Cong. Rec. H14078, H14105 (daily ed. Dec. 6, 1995) (statement of Rep. Lobiondo) (citing *McCarthy v. Madigan*, 503 U.S. 140 (1992) as the reason the amendment to the exhaustion requirement was needed). The Supreme Court has interpreted this provision specifically to require that "federal prisoners suing under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), must first exhaust inmate grievance procedures." *Porter v. Nussle*, 534 U.S. 516, 534 (2002). In legislating on whether a prisoner must exhaust prison remedies before bringing a *Bivens* action, Congress cannot possibly have intended such remedies to displace a *Bivens* action.

The most straightforward reading of the district court's opinion is that it believed that *Bivens* is no longer good law, full stop. The court wrote that the Supreme Court's recent opinions in *Abbasi* and *Abbasi* "make crystal clear that the Court views the original, court-created *Bivens* remedy as violating fundamental separation of powers principles." Add. 5. The Court has certainly been critical of *Bivens* but the district court's primary source for this claim was a one-Justice concurrence in *Egbert*. *Id.* One-Justice

concurrences are not the law, and even the one Justice writing here argued that the purported overruling was "implicit" rather than "explicit," and "implicit" abrogations are precisely the sort that the Supreme Court has insisted it is not the prerogative of lower courts to enforce. *See Egbert*, 596 U.S. at 502. Most importantly, as noted above, the majority opinions in *Egbert* and *Abbasi* expressly did not overrule *Bivens* or *Carlson*, but did the opposite, reaffirming them as good law even while severely curtailing their expansion.

The district court's primary error was invoking the Tenth Circuit's precedent while ignoring this Court's own. This Court in *Quinones-Pimentel v. Cannon* analyzed the post-*Egbert* landscape in a case that focused on the meaningful differences between the plaintiff's allegations and those of *Bivens* itself, as the plaintiffs had brought Fourth Amendment claims rather than Eighth Amendment ones. 85 F.4th 63, 69 (1st Cir. 2023). This Court noted the Supreme Court's recent hesitancy to expand the *Bivens* remedy, then noted that, "[a]ll that said, the Supreme Court has never overruled *Bivens* and, most recently, clarified how courts should assess such claims." *Id.* First, this Court wrote, a court must analyze whether the present case is "meaningfully different" from *Bivens, Carlson,* or *Davis. Id.* This Court explained that while the "meaningfully different" test is easily satisfied, this does not mean that trivial differences will do. *Id.* If (and only if) there are meaningful differences, the court's "next and final question is whether there are any 'special factors' counseling hesitation." *Id.* at 70. In sum, "the modern *Bivens* analysis involves a factual comparison to the facts of *Bivens*

itself (or *Davis*, or *Carlson*, depending on the case), with an emphasis on avoiding any extension of *Bivens* to meaningfully new factual circumstances." *Id.*

The task that this Court set out for district courts in *Quinones-Pimentel* is one that the district court declined to do. Instead, the district court wrote, it need not decide whether Waltermeyer's allegations contained "meaningfully new factual circumstances" because *Egbert* ended the requirement that it consider whether there is any meaningful difference between the present case and *Carlson*.

While the district summarized the Tenth Circuit's law correctly, it is this Court's law that binds the district court. For good measure, no other appellate court has joined the Tenth Circuit's reasoning. In *Stanard v. Dy*, the Ninth Circuit reversed a district court that had dismissed a *Bivens* claim, holding that no meaningful difference existed between the plaintiff's claim and *Carlson*. 88 F.4th 811, 817 (9th Cir. 2023). "Because [the plaintiff's] Eighth Amendment claims arise within an existing context, [the court] need not proceed to the special factors inquiry." *Id.*

The Fifth Circuit made the same holding in *Vaughn v. Bassett*. No. 22-10962, 2024 WL 2891897, at *3 (5th Cir. June 10, 2024). The court analyzed the factual differences between the plaintiff's allegations and those in *Carlson* and then asked whether those differences were "meaningful." *Id.* Turning to post-*Abbasi* but pre-*Egbert* authority, the court held that it was bound to conclude that the differences were not. *Id.*

Other circuits agree. *See, e.g., Hampton v. Jones*, No. 21-2880, 2022 WL 4820355, at *3 (3d Cir. Oct. 3, 2022) ("To the extent Hampton also alleged an Eighth

Amendment claim of deliberate indifference to his serious medical needs against defendant Ayers, courts have long recognized a Bivens cause of action in this context. *See Carlson v. Green*, 446 U.S. 14, 19 (1980)"); *Masias v. Hodges*, No. 21-6591, 2023 WL 2610230, at *1 (4th Cir. Mar. 23, 2023) (reversing a district court that "reasoned that Masias' claims presented a new context from *Carlson v. Green*, 446 U.S. 14 (1980)—which recognized a *Bivens* remedy for a claim of Eighth Amendment deliberate indifference to serious medical needs"); *Patton v. Blackburn*, No. 21-5995, 2023 WL 7183139, at *3–4 (6th Cir. May 2, 2023) ("As noted above, the Supreme Court has recognized a *Bivens* action for an Eighth Amendment claim based on the failure to provide adequate medical care."); *Bernier v. Allen*, 38 F.4th 1145, 1150 (D.C. Cir. 2022) (citing to *Carlson* as "recognizing availability of *Bivens* claims for Eighth Amendment violations where prison officials fail to provide adequate medical treatment").

In addition to these Eighth Amendment medical care claims, other circuits have also made clear the continued existence of *Bivens* in the Fourth Amendment context post-*Egbert*. *See, e.g., Snowden v. Henning*, 72 F.4th 237, 241–42, 245 (7th Cir. 2023) (holding that a Fourth Amendment *Bivens* claim could proceed, explaining that although the "path" for a "Bivens claim to proceed" is a "narrow" one, the Supreme Court "has stopped short of overruling the *Bivens* trilogy."); *Hicks v. Ferreyra*, 64 F.4th 156, 165–66 (4th Cir. 2023) (holding that a Fourth Amendment *Bivens* claim could proceed because of the Court's "clear explanation in [*Ziglar*] that [the] severe narrowing of the *Bivens* remedy in other contexts does not undermine the vitality of *Bivens* in the warrantless-

search-and-seizure context of routine criminal law enforcement"). Like *Quinones-Pimentel*, these opinions are inconsistent with the district court's conclusion that *Egbert sub silentio* ended *Bivens* remedies. The district court was mistaken, and this Court should reverse and remand for further proceedings.

## CONCLUSION

For the foregoing reasons, the district court decision should be reversed and the case should be remanded.

September 1, 2024

Respectfully submitted,

/s/ *Samuel Weiss*
Samuel Weiss
RIGHTS BEHIND BARS
416 Florida Avenue NW
  #26152
Washington, DC 20001
202-455-4399
sam@rightsbehindbars.org

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume, typeface, and type-style requirements of Rule 32(a) of the Federal Rules of Appellate Procedure. This brief contains 3,787 words excluding the parts of the document exempted by Fed. R. App. 32(f), as calculated in Version 15.26 of Microsoft Word for Mac 2016. It was prepared in 14-point font using Garamond, a proportionally spaced typeface. The text of the electronic brief is identical to the text of the paper copies. A virus detection program was run on the file and no virus was detected.

/s/    *Samuel Weiss*
Samuel Weiss

**CERTIFICATE OF SERVICE**

I certify that on September 1, 2024, I electronically transmitted the foregoing brief to the Clerk of the Court using the appellate CM/ECF System, causing it to be served on counsel of record, who are all registered CM/ECF users.

/s/  *Samuel Weiss*
Samuel Weiss

| District Court Order, Doc. No. 45 | Addendum Page 1 |
| District Court Judgment, Doc. No. 46 | Addendum Page 9 |

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Broc T. Waltermeyer

      v.

Warden, FCI Berlin &
Diane L. Kistler

Civil No. 19-cv-233-LM
Opinion No. 2024 DNH 017 P

### O R D E R

Pro se plaintiff Broc T. Waltermeyer alleges that defendants, former Warden of the Berlin, New Hampshire Federal Correctional Institution ("FCI Berlin") Robert Hazlewood and an FCI Berlin physician, Diane L. Kistler, violated his Eighth Amendment rights. Waltermeyer seeks money damages pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), claiming that defendants provided inadequate medical treatment during his incarceration at FCI Berlin. Defendants moved to dismiss Waltermeyer's Bivens claim. Doc. no. 33. The Magistrate Judge issued a Report and Recommendation ("R&R") on December 28, 2023, recommending that the district court deny the motion to dismiss. Doc. no. 38. Defendants object. Doc. no. 44. The court rejects the R&R for the reasons explained below.

### BACKGROUND

The United States Supreme Court has recognized only three factual contexts in which a plaintiff may bring a Bivens claim: (1) a Fourth Amendment claim consisting of facts comparable to Bivens itself, see Bivens, 403 U.S. 388 at 389-91;

(2) a Fifth Amendment Equal Protection Clause claim for sex discrimination, <u>see</u>

<u>Davis v. Passman,</u> 442 U.S. 228 (1979); and (3) an Eighth Amendment claim for

inadequate medical treatment, <u>see</u> <u>Carlson v. Green,</u> 446 U.S. 14 (1980). <u>See</u>

<u>Quinones-Pimentel v. Cannon,</u> 85 F.4th 63, 69 (1st Cir. 2023) (summarizing legal

landscape). It is undisputed that Waltermeyer's <u>Bivens</u> claim for inadequate

medical treatment invokes <u>Carlson.</u>

     Since <u>Carlson,</u> the Supreme Court has "consistently" refused to extend <u>Bivens</u>

despite numerous opportunities to do so. <u>See</u> <u>Ziglar v. Abbasi,</u> 582 U.S. 120, 137

(2017); <u>Quinones-Pimentel,</u> 85 F.4th at 69 (collecting Supreme Court cases). At the

same time, the Supreme Court has not overruled <u>Bivens.</u> <u>Egbert v. Boule,</u> 596 U.S.

482, 491 (2022) ("[R]ather than dispense with <u>Bivens</u> altogether, we have

emphasized that recognizing a cause of action under <u>Bivens</u> is 'a disfavored judicial

activity.'" (quoting <u>Abbasi,</u> 582 U.S. at 135)). Instead, the Court has imposed "a

highly restrictive two-step analysis," which limits when claims for damages against

federal officers may proceed. <u>Bulger v. Hurwitz,</u> 62 F.4th 127, 136-37 (4th Cir.

2023).

     The two-step analysis proceeds as follows: under the first step, the court must

determine whether the claim seeks to apply <u>Bivens</u> in a "new context." <u>Egbert,</u> 596

U.S. at 492. A claim arises in a new context if it is "meaningfully different" from the

three cases in which the Supreme Court has authorized damages claims against

federal officers for constitutional violations. <u>Id.</u> Meaningful differences may include:

> the rank of the officers involved; the constitutional right at
> issue; the generality or specificity of the official action; the

> extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the function of other branches; <u>or the presence of potential special factors that previous Bivens cases did not consider.</u>

Abbasi, 582 U.S. at 140 (emphasis added). Thus, a meaningful difference exists where a claim presents "special factors" that the Supreme Court did not consider in one of the three original <u>Bivens</u> cases.

If there are meaningful differences that place the plaintiff's claim in a new context, the court proceeds to the second step. Egbert, 596 U.S. at 492. In <u>Egbert</u>, the Supreme Court explained that "a new context arises when there are 'potential special factors that previous <u>Bivens</u> cases did not consider.'" Egbert, 596 U.S. at 492 (quoting Abbasi, 582 U.S. at 137). Most importantly for the instant case, <u>Egbert v. Boule</u> holds that an alternative remedial structure may be one of the many "special factor[s]" that the three previous <u>Bivens</u> actions did not consider. See id. at 492-93; Noe v. United States, No. 23-1025, 2023 WL 8868491, at *3 (10th Cir. Dec. 22, 2023); Silva v. United States, 45 F.4th 1134, 1139 (10th Cir. 2022); Arias v. Herzon, --- F. Supp. 3d ---, 17-cv-516-LM, 2023 WL 4204657, at *5 (D.N.H. June 27, 2023) ("[T]he Supreme Court made clear that an alternative remedial structure is a 'special factor' which courts must give heightened consideration.").

This means that, after <u>Egbert</u>, the two-step framework "often resolves to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." Egbert, 596 U.S. at 492. Stated another

way: "[Whether] Congress already . . . provided, or . . . authorized the Executive to provide, an 'alternative remedial structure.'" Id. 494 (internal citations omitted) (quoting Abbasi, 582 U.S. 120, 137 (2017)). If the court answers that question in the affirmative, then the Bivens claim does not survive.

As the Court in Egbert recognized, it denied relief "for two independent reasons: Congress is better positioned to create remedies in the border-security context, and the Government already has provided alternative remedies that protect plaintiffs . . . ." Id. (emphasis added). Ultimately, Egbert is unequivocal: "[a] court faces only one question: whether there is any rational reason (even one) to think that Congress is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" Id. at 496 (quoting Abbasi, 582 U.S. at 136).

The bottom line is that Egbert precludes a Bivens claim where there is a new alternative remedial structure available to the plaintiff. See Noe, 2023 WL 8868491, at *3; Silva, 45 F.4th at 1139; Arias, 2023 WL 4204657, at *5. As the Tenth Circuit explained in Noe v. United States, where—as here—a plaintiff brings a Carlson claim despite having the availability of the Bureau of Prisons's ("BOP") Administrative Remedy Program ("ARP") during his incarceration, the district court must dismiss the claim as a matter of law. Noe, 2023 WL 8868491, at *3. Following Egbert, "the availability of the ARP is sufficient to foreclose a Bivens claim despite any factual similarity between the two." Id. In Noe, the Tenth Circuit concluded that it "need not decide whether [the plaintiff's] case is meaningfully different from Carlson because in the wake of Egbert and Silva v. United States, the availability of

4

the ARP is sufficient to foreclose a <u>Bivens</u> claim despite any factual similarity

between the two." <u>Id.</u> (internal citation omitted).

### APPLICATION OF <u>EGBERT</u> TO THIS CASE

The Tenth Circuit's decision in <u>Noe</u> is on all fours with Waltermeyer's case.

Regardless of the similarity between Waltermeyer's alleged circumstances and the

facts in <u>Carlson</u>, the ARP's existence eliminates any possibility that his claim

survives. There is no discovery that could breathe life into this claim.

The more recent cases from the Supreme Court, <u>see</u> <u>Egbert,</u> 596 U.S. at 491,

<u>Abbasi,</u> 582 U.S. at 133, <u>Hernandez v. Mesa,</u> 140 S. Ct. 735, 741 (2020), make

crystal clear that the Court views the original, court-created <u>Bivens</u> remedy as

violating fundamental separation of powers principles. <u>See</u> <u>Egbert, 596 U.S. at 502</u>

(Gorsuch, J., concurring) ("Our Constitution's separation of powers prohibits federal

courts from assuming legislative authority. As the Court today acknowledges,

<u>Bivens</u> crossed that line . . . ." (internal citation omitted)); <u>Abbasi,</u> 582 U.S. at 13

("[I]t is a significant step under separation-of-powers principles for a court to

determine that it has the authority, under the judicial power, to create and enforce

a cause of action for damages against federal officials in order to remedy a

constitutional violation."); <u>Hernandez,</u> 140 S. Ct. at 739 ("As we have made clear in

many prior cases, however, the Constitution's separation of powers requires us to

exercise caution before extending <u>Bivens</u> to a new 'context,' . . . .").

Those separation of powers principles animate the decisions in <u>Egbert</u> and

<u>Abbasi</u>. In cases where an alternative remedial scheme (that was not considered by

5

the Court in Carlson) exists, Egbert and Abbasi command the lower courts to exercise judicial restraint and defer to the authority of the executive (or legislative) branch that provided the alternative remedy.

The R&R attempts to distinguish my decision in Arias because (1) I decided Arias at summary judgment, and (2) Arias is presently on appeal. But these distinctions ignore the key legal principle in Arias: after Egbert, an alternative remedial structure is "sufficient by itself" to preclude a Bivens claim. Arias, 2023 WL 4204657, at *3. This principle is not only consistent with Egbert, it is also supported by the Tenth Circuit's post-Egbert caselaw. See Noe, 2023 WL 8868491, at *3 (viewing the takeaway from Egbert "as being that courts may dispose of Bivens claims for two independent reasons" (internal quotation marks and brackets omitted)); Silva, 45 F.4th at 1141 (finding that the ARP "offers an independently sufficient ground to foreclose [the plaintiff's] Bivens claim").

Further, the court's determination that alternative remedies independently preclude a Bivens action is consistent with Egbert's citation to Correctional Services Corp. v. Malesko, 534 U.S. 61 (2001). In Malesko, the Supreme Court declined to extend Bivens relief to claims asserted against a BOP contractor. Malesko, 534 U.S. at 63. In Egbert, the Court discussed Malesko approvingly: "In Malesko, we explained that Bivens relief was unavailable because federal prisoners could, among other options, file grievances through an 'Administrative Remedy Program.'" Egbert, 596 U.S. at 497 (quoting Malesko, 534 U.S. at 74). This is the same

remedial structure that was available to Waltermeyer. The court, therefore, declines to abandon the approach it took in Arias.

The R&R contends that more factual development is necessary to determine whether alternative remedies were available to Waltermeyer. But Waltermeyer does not dispute that, while he was in the custody of the BOP, the ARP was available to him.[1] Instead, Waltermeyer's objection to defendants' motion to dismiss argues that the court need not consider the availability of alternative remedies because his case is not a new Bivens context. However, as explained above, the Supreme Court's recent jurisprudence calls on lower courts to consider alternative remedial structures when determining whether a Bivens claim presents a new context, and the availability of ARP places Waltermeyer's claim in a context that differs from Carlson.

The R&R additionally asserts that, to the extent Waltermeyer had alternative remedies other than the ARP available, those remedies are insufficient to resolve his claims. This assertion, however, goes against Egbert: "the question whether a given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts." 596 U.S. at 498. Therefore, under Egbert, the court must not assess the sufficiency of the remedies available to Waltermeyer.

The takeaway from the Supreme Court's recent Bivens jurisprudence is that separation of powers principles call for judicial restraint. Those principles informed

---

[1] Waltermeyer's original complaint, construed as part of his third amended complaint in the R&R, explicitly states that Waltermeyer "exhausted his Administrative Remedy process." Doc. no. 1 at 1.

my reasoning in <u>Arias</u>, and I am not persuaded by the Magistrate Judge's attempt to distinguish it.

## CONCLUSION

For the aforementioned reasons, the court rejects the Magistrate Judge's Report and Recommendation (doc. no. 38). The court grants defendants' motion to dismiss (doc. no. 33). Accordingly, the clerk of court shall enter judgment and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

March 14, 2024

cc:   Broc. T. Waltermeyer, pro se
      Counsel of Record

8

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Broc T. Waltermeyer

       v.                                 Case No. 19-cv-233-LM-AJ

FCI Berlin, Warden et al

<u>JUDGMENT</u>

In accordance with the order by Chief Judge Landya B. McCafferty dated March 14, 2024, rejecting the Report and Recommendation of Magistrate Judge Andrea K. Johnstone dated December 28, 2023, judgment is hereby entered.

By the Court:

/s/ Daniel J. Lynch
Daniel J. Lynch
Clerk of Court

Date: March 15, 2024

cc: Broc T. Waltermeyer, pro se
    Counsel of Record